## STATE OF CONNECTICUT *v.* PABLO RIVERA
## (7830)

DALY, O'CONNELL and CRETELLA, Js.

Argued October 4—decision released December 11, 1990

*Gary A. Cicchiello* and *Christine M. Hawks,* certified legal interns, with whom were *Michael R. Sheldon* and, on the brief, *Todd D. Fernow* and *Timothy H. Everett,* and *Sandra L. MacVicar, Marjorie M. Selig* and *Jennifer L. Wrinn,* certified legal interns, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Linda N. Howe,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from his conviction, after a jury trial, of possession of a narcotic substance with intent to sell by a non-drug-dependent person in violation of General Statutes § 21a-278 (b). The defendant raised four separate issues as possible grounds for this court to vacate his conviction. He claims that (1) the evidence used to convict him was illegally seized, (2) the state's use of a peremptory jury challenge was racially discriminatory, (3) the trial court improperly instructed the jury on the presumption of non-drug-dependency, and (4) there was insufficient evidence to sustain the conviction.

I

MOTION TO SUPPRESS

The court could reasonably have found that at about 10:30 on the night in question three Bridgeport police officers were on patrol in that city in a marked cruiser in Father Panik Village, a high crime area frequented by drug dealers. The officers were there to observe a drug sale that they reasonably believed would occur in a courtyard between buildings thirty-one and thirty-two. To effect their observation, they drove the cruiser partially onto the sidewalk, so that the front wheels were on the sidewalk and the rear wheels remained in the street. The cruiser's headlights were on but not its flashing lights and siren. Prior to their arrival, the officers had no reason to expect a group of people to be standing on the sidewalk about fifteen feet from where they stopped. Upon noticing these people, however, one officer left the cruiser and walked toward them. The officer and the defendant made brief eye contact and

the defendant began to walk away. This departure focused the officer's attention on the defendant and he followed him approximately ten feet at which point the defendant threw a brown paper bag into some bushes. The officer then ordered the defendant to stop until the bag's contents were investigated. The contents eventually proved to be narcotics.

The defendant argues that he was illegally seized from the time the officer left the cruiser and followed him and that the discarding of the bag was his response to this unlawful police action. The court found that when the defendant discarded the bag, he did not know he was being followed and, therefore, he could not claim to have been seized prior to that point. A person is seized if, in view of all the circumstances, a reasonable person would have believed that he was not free to leave. *United States* v. *Mendenhall,* 446 U.S. 544, 553–54, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *State* v. *Brown,* 199 Conn. 47, 53, 505 A.2d 1225 (1986). Because the defendant did not testify at the suppression hearing, we lack the benefit of his impression of whether he felt free to leave.

A fleeing defendant's fourth amendment rights are not implicated until the pursuing police officer first issues a command to halt. *Michigan* v. *Chesternut,* 486 U.S. 567, 108 S. Ct. 1975, 100 L. Ed. 2d 565 (1988). "Our own case law brings us to the same result. 'We know of no Connecticut case . . . that holds that merely following another, absent any show of force or authority or direction to halt, constitutes a stop within the meaning of the fourth amendment.' " *State* v. *Oliver,* 17 Conn. App. 108, 110–11, 550 A.2d 316 (1988), quoting *State* v. *Rodriguez,* 14 Conn. App. 574, 577, 542 A.2d 342 (1988).

The officer, while lawfully walking behind the defendant in an area known for a high level of drug activity,

was justified in detaining the defendant to investigate the bag's contents at the moment he saw him throw the bag into the bushes because it was at that time the officer first had a reasonable, articulable suspicion that criminal activity was afoot. *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In determining the reasonableness of the officer's suspicion we may consider the fact that this was an area noted for a high level of drug activity. *State* v. *Rodriguez,* supra, 578.

The defendant's argument that he was seized as soon as the officer left the cruiser is not supported by the record. The officer did not cut the defendant off, block his path, use his flashing lights or siren, draw his pistol or otherwise engage in any conduct that would communicate to a reasonable person that he was seized and not free to leave. The only contact between the officer and the defendant was the momentary eye contact when the officer approached the group. If simple eye contact with a police officer communicates to a person that he is not free to leave, a large portion of the population would be under seizure at any given time.

Whether the officer ordered the defendant to stop before or after he discarded the bag was a disputed question of fact that the trial court resolved against the defendant. It is axiomatic that we do not retry the facts nor pass on the credibility of witnesses. *Bowman* v. *Williams,* 5 Conn. App. 235, 238, 497 A.2d 1015 (1985), cert. dismissed, 201 Conn. 366, 516 A.2d 1351 (1986).

In summary, because the officer did not order the defendant by word or act, to halt before the bag was discarded, there was no unlawful seizure and consequently no subsequent unlawful search. The motion to suppress was properly denied as was the motion to dismiss which was based on the claim of an illegal search.

## II

### RACIAL DISCRIMINATION IN JURY SELECTION

The defendant, who is a black Puerto Rican, argues that the trial court violated his state and federal constitutional rights to equal protection of the law by failing to find that the state's use of a peremptory challenge to prevent a black venireperson from serving on the jury amounted to purposeful racial discrimination. The defendant objected to the state's use of a peremptory challenge during jury selection to remove a black potential juror. The objection was based solely on the grounds that because the defendant was a black Puerto Rican, the removal of the black venireperson constituted purposeful racial discrimination by the state.

It is well established that a state's attorney may not "challenge potential jurors solely on account of their race or on the assumption that . . . jurors [of the defendant's race] as a group will be unable impartially to consider the State's case against [the] defendant." *Batson* v. *Kentucky,* 476 U.S. 79, 89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). We recognize that the unlawful exercise of a peremptory challenge could constitute a prima facie case of discrimination even if other jurors of the same race sit on the jury. *United States* v. *Clemons,* 843 F.2d 741, 747 (3d Cir. 1988). Thus, our analysis cannot end simply because other black jurors were accepted for the jury without challenge by the state.[1]

---

[1] Six jurors and three alternates were selected from a panel of fifty venirepersons, eight of whom were black. Two of the selected jurors were black, one was Puerto Rican and one alternate was black. The state removed five potential jurors for cause, one of whom was black and another Cuban. The defendant removed nine for cause, one of whom was black. The state exercised five peremptory challenges, which excluded three black venireper-

To prevail on a purposeful racial discrimination claim, the defendant was required to follow the guidelines established in *Batson* v. *Kentucky,* supra. See *State* v. *Holloway,* 209 Conn. 636, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989).[2] "Procedurally, the defendant bears the burden of persuading the trial court by a preponderance of evidence that the state's use of the peremptory challenge was tainted by purposeful racial discrimination. . . . Once the defendant has established a prima facie case of purposeful racial discrimination, the burden shifts to the state to advance a neutral explanation for the venireperson's removal. . . . The defendant is then afforded the opportunity to demonstrate that the state's articulated reasons are insufficient or pretextual." (Citations omitted.) Id., 640–41.

We must first determine whether the defendant established a prima facie case of racial discrimination. Three elements must be satisfied in order to raise an inference of purposeful racial discrimination. " '[T]he defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second . . . that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor

sons. The defendant exercised two peremptory challenges both of which excluded white jurors. The result was a nine member jury (including alternates), four of whom were either black or Puerto Rican.

[2] In *State* v. *Holloway,* 209 Conn. 636, 646 n.4, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989), the Supreme Court recommended a procedure for future cases that is substantially different from that which is appropriate in the present case.

used that practice to exclude the veniremen from the petit jury on account of their race.' . . ." Id., 641.[3]

In the present case, the defendant offered evidence to prove that he was a black Puerto Rican and then took advantage of the presumption that the peremptory challenge process is a system that can be used to discriminate racially. This is not enough. The defendant offered no evidence of other relevant factors in this particular case that would raise an inference that the state had used the peremptory challenge process to exclude potential jurors because of their race.[4] In short, he satisfied the first two *Batson* prongs but totally failed to satisfy the third prong. The court properly concluded that the defendant failed to establish a prima facie case and therefore the state's attorney was not required to state a neutral reason for the challenge.[5]

---

[3] As to the second element, the defendant is entitled to rely on the fact that "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' . . ." (Citation omitted.) *Batson* v. *Kentucky,* 476 U.S. 79, 96, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[4] Our Supreme Court has suggested some relevant factors that may be taken into consideration in determining whether the defendant has satisfied his burden of making a prima facie showing of a discriminatory peremptory challenge. "These include (1) whether 'the prosecutor failed to question the challenged juror or only questioned him or her in a perfunctory manner'. . . (2) whether 'prospective jurors of one race were asked a question to elicit a particular response that was not asked of other jurors'. . . (3) whether 'persons with the same or similar characteristics but not the same race as the challenged juror were not struck'. . . and (4) whether 'the prosecutor used a disproportionate number of peremptory challenges to exclude members of one race.' " (Citations omitted.) *State* v. *Holloway,* 209 Conn. 636, 643, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989), quoting *State* v. *Gonzalez,* 206 Conn. 391, 399, 538 A.2d 210 (1988).

These suggested factors were originally set forth in *State* v. *Gonzalez,* supra, as relevant to the question of whether the prosecutor's explanation of the use of a peremptory challenge was neutral. They are equally relevant, however, to a determination of whether the defendant has established a prima facie showing of discrimination.

[5] The court asked the state's attorney if she would voluntarily state neutral reasons for exercising the challenge. She responded that under guide-

At oral argument before this court, the defendant argued that if the trial court had a *suspicion* that the state had exercised a peremptory challenge for racially discriminating reasons, it should have ordered the state's attorney to recite a neutral reason for the record. We do not agree. Mere suspicion is not sufficient to require an articulation. The standard of proof is that the defendant must establish by *a preponderance of the evidence* relevant circumstances from which the court may reasonably infer that the state's attorney unlawfully exercised a challenge. Id., 640–41. The trial court properly concluded that the defendant failed to meet this standard.

The defendant further contends that the trial court precluded him from fully presenting his argument on the prima facie issue. A footnote in the defendant's brief quotes from a portion of the transcript that appears to indicate abrupt action by the trial court summarily cutting off his argument on that point. This sixteen line quotation, however, is only a small part of a colloquy covering nine pages of transcript. It becomes apparent from our review of those nine pages that the defendant was under the mistaken impression that by simply proving his race, he could require the state to explain the reasons for the challenge. Reference to the transcript also discloses that the defendant had ample opportunity to argue fully his position and to develop

---

lines from the chief state's attorneys office she would not state her reasons unless the court first made a finding of a prima facie case of purposeful discrimination.

Although a trial court's request that a prosecutor state neutral reasons for a challenge may be construed as an implied ruling that the defendant has raised a reasonable question of discrimination; *State* v. *Graham,* 21 Conn. App. 688, 712, 575 A.2d 1057 (1990); the facts of the present case clearly rebut any such implied ruling here. The trial court preceded its request that the state give neutral reasons by expressly stating, *"I am in no way indicating that any discrimination has been shown,* I think out of an abundance of caution, I will call on you to articulate neutral reasons, if you have any, for striking this juror." (Emphasis added.)

any relevant circumstances. The defendant did not do so, but instead erroneously chose to rely on his argument that a showing of race plus the undisputed fact that peremptory challenges were a possible device for discrimination were enough.

We conclude that the defendant did not establish a prima facie case that the state's use of a peremptory challenge to remove the prospective juror in question from the venire was racially motivated. The trial court's ruling was, therefore, correct.

## III

### DRUG DEPENDENCY

We will consider the defendant's third and fourth claims together because they both relate to the drug dependency aspect of the case.

The defendant argues that the trial court should not have permitted the jury to make the initial determination of drug dependency. Subsequent to trial of the present case, this court decided *State* v. *Luca,* 19 Conn. App. 668, 563 A.2d 752 (1989), holding that it is the duty of the court and not the jury to decide if the defendant has introduced sufficient evidence of drug dependency to put the burden on the state of proving non-drug-dependency. In light of the *Luca* decision, the state concedes that the jury instructions on this point were erroneous. It argues, nevertheless, that the error was harmless because the defendant failed to present sufficient evidence to satisfy his burden. We do not agree.

After *Luca,* this court decided *State* v. *McNeil,* 21 Conn. App. 519, 574 A.2d 1314 (1990), holding that the trial court is limited to determining whether the defendant has introduced sufficient evidence *if credited by the jury* to raise a reasonable doubt as to non-drug-dependency. It is the trial court's duty to weigh all the

evidence and to determine whether that evidence, *if believed by the jury,* would permit a reasonable jury to entertain a reasonable doubt that the defendant was not drug-dependent at the time of the alleged crime.

In the present case, the defendant offered evidence of drug dependency through David Hunt, an emergency medical technician employed in the medical unit of the Bridgeport jail, who had examined the defendant the day after his arrest. Hunt testified, without objection by the state, that the defendant had admitted that he was a drug addict with a $200 a day heroin, cocaine and crack cocaine habit and that he had last used drugs the previous day. Hunt also testified that he had observed that the defendant was suffering from nausea, rhinitis and slightly elevated vital signs, all of which are consistent with drug usage. As a consequence of this examination, Hunt started the defendant on a drug detoxification program resulting in his receiving medication on four occasions.

The state now attempts to attack Hunt's credentials. There are two answers to the state's position. First, the evidence was introduced without objection, thereby becoming part of the record in the case. Any argument concerning Hunt's qualifications at this point is untimely. Second, *McNeil* does not require testimony of a medical expert; all that is necessary is substantial evidence of drug dependency. The trial court's only duty is "to assure that the burden of proving [non-drug-dependency] is not put on the state where there has been only a tangential, casual, or frivolous mention of the defendant's possible [drug dependency]." Id., 522.

The state countered with evidence from the booking officer that at the time of the defendant's booking (1) no narcotic paraphernalia were found among the items removed from his pockets, (2) the defendant did not appear in need of hospitalization at that time, and (3) the

officer had no difficulty obtaining general information from him during the booking process. We are not persuaded that the state's evidence was sufficient to defeat a finding that the defendant's evidence, if credited by the jury, was sufficient to raise a reasonable doubt as to non-drug-dependency.

We conclude that the defendant introduced substantial evidence of drug dependency, thus putting the burden on the state of proving beyond a reasonable doubt that the defendant was non-drug-dependent. The state did not meet its burden. We conclude, however, that the state offered sufficient evidence to justify a conviction of the lesser included offense of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a). See *State* v. *McNeil*, supra, 523.

The judgment of conviction of possession of a narcotic substance with intent to sell by a person who is not drug-dependent, in violation of General Statutes § 21a-278 (b), is reversed. The case is remanded with direction to render a judgment of acquittal on that charge, to render a judgment of conviction of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a), and to resentence the defendant in accordance with that conviction.

In this opinion the other judges concurred.

