[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Defendant has moved to supress any and all items of contraband, particularly plastic baggies and powders, field tested and found to be cocaine, seized from or about a motor vehicle operated by the defendant. Defendant contends that he was the subject of an illegal and unconstitutional seizure or stop.
From evidence presented at the hearing and exhibits introduced, the following is found:
On April 26, 1992, at approximately 2:30 a.m., while on routine patrol on I-95 in Waterford, Connecticut State Police Trooper Todd Lynch observed a 1975 Ford, occupied by four young black males, travelling northbound at approximately 50-55 miles per hour in the right-hand lane. The area was illuminated by lights on standards and a light CT Page 10969 misty rain was falling, necessitating use of the cruiser's windshield wipers.
The trooper's attention was initially drawn to the vehicle because at some point between August and October of 1991 he had had a previous encounter with a similar vehicle during a larceny investigation. The trooper radioed his barracks to confirm his suspicion that it was the same vehicle; while awaiting a reply, he pulled out from behind the vehicle, which he had been following at one or two full-size car lengths distance, drew up beside and slightly behind the vehicle in the left lane. The trooper's steering wheel was about even with the center roof post of the Ford. At about this point, the barracks confirmed the trooper's dual suspicions that it was the same vehicle, and that it was registered to an older white male.
Prior to pulling into the left-hand lane, the trooper had clearly observed the driver's seat belt in the "up and down" position, indicating that the driver was not wearing it. While in the left lane, the trooper noted that the driver, identified by Trooper Lynch as the defendant, whose weight he estimated at 400 pounds, was lying nearly supine in the driver's seat, with his head almost in the lap of the rear seat passenger. The trooper observed the seat belt did not cross the driver's body. Trooper Lynch also observed both portions of the seat belt straps in an up and down position against the driver's side roof post.
After this second observation of the seat belt, the trooper pulled back in behind the subject vehicle. He activated his cruiser's grille or wig-wag lights and the roof rack lights. The vehicle did not slow down. The trooper saw furtive movements from the occupants, one appearing to be crushing a substance and then saw a hand exit the front passenger window and three times a white substance was thrown out of this window. The majority of the substances landed on the road; however some reached the hood of the cruiser. The vehicle then stopped. After back-up arrived, Trooper Lynch walked to the passenger side of the vehicle and observed a white rock-like substance on the front window jam and passenger's floorboard. Trooper Lynch believed this substance to be rock cocaine based upon his training and experience. CT Page 10970
Seized were a) white rock-like substances, field-tested and found positive for cocaine from the road surface; b) white rock-like substance from the front passenger's side window jam; c) white rock-like substance found on the front passenger's side floorboard; d) piece of plastic bag found on passenger's side floorboard; e) pager subsequently found on left rear seat at Troop E, and; f) pager subsequently found on the driver's seat at Troop E.[1]
Trooper Lynch testified and the court finds that the trooper would not have stopped this motor vehicle but for the fact that the operator was not wearing a seatbelt, an infraction violation of Connecticut General Statutes 14-100a.
Citing State v. Rivera, 23 Conn. App. 592 (1990), the State concedes that a seizure of the defendant occurred once the trooper observed the defendant not wearing his seat belt and activated the cruisers grille or wig-wag lights and roof rack lights.
Both sides agree that the initial issue is whether Trooper Lynch was justified in stopping the motor vehicle operated by the defendant.[2]
The court credits the testimony of Trooper Lynch that he observed the defendant not wearing his seat belt while operating a motor vehicle on I-95, a public highway.
"A police officer has the right to stop a motor vehicle operating on a Connecticut highway even if the reason for the stop is only an infraction under our traffic laws." State v. Dukes, 209 Conn. 98, 122 (1988). See also: State v. Lizotte, 11 Conn. App. 11, 16 (1987); State v. Lamme, 216, Conn. 172, 176 (1990); State v. Leonard, 14 Conn. App. 134,137 (1988).
"It is also well accepted that a police officer is not required to perform his routine duties with his eyes closed. (Citation omitted.) This assumption has been used in conjunction with the recognized lesser expectation of privacy in a motor vehicle. (Citation omitted.) The resulting line of cases holds that objects in open view of a police officer, who sees them from a lawful vantage point, may be seized without a warrant. (Citations omitted.)" State v. Grillo, 23 Conn. App. 50, 54 (1990). CT Page 10971
In the instant case, the contraband thrown from the passenger window of the motor vehicle and that observed in open view within the vehicle by Trooper Lynch as a result of the valid stop for the motor vehicle infraction was validly seized without a warrant.
The defendant next contends that Connecticut General Statutes 54-33m precluded a stop and search. Connecticut General Statutes 54-33m provides in relevant part: "The failure of an operator of. . . a private passenger vehicle. . . to wear a seat safety belt as required by Section14-100a shall not constitute probable cause for a law enforcement official to conduct a search of such vehicle and its contents."
Although no caselaw was found interpreting this legislation in the instant case, Trooper Lynch observed furtive movements by the passengers when he attempted to stop the vehicle, he observed what he believed to be contraband being crushed and thrown out of the vehicle, and after the vehicle stopped, in open view, he observed more contraband on the passenger side of the vehicle. Under these circumstances, what was observed in open view and then seized was not precluded by Connecticut General Statutes 55-33m. See State v. Grillo, supra.
Defendant also claims that this stop was pretextual, contending that Trooper Lynch stopped the vehicle for a DWI check and for other alleged nefarious reasons.
Trooper Lynch testified that he did not always stop a vehicle when its operator was observed not to be wearing a seat belt. He further testified that on weekends "we like to stop motor vehicles for motor vehicle violations to get a look inside vehicles and check for presence of DWI, operating under the influence." (Emphasis added.) Significantly, Trooper Lynch also testified that he would not have stopped the subject vehicle if the defendant operator's seat belt had been properly attached.
It is evident that the instant stop was effectuated for the seat belt violation; although, because it was a weekend, the trooper had the additional reason of looking for DWI operation in the early morning hours. There is obviously CT Page 10972 no indication or testimony that the stop of the subject vehicle was drug-related.
"A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop. The classic example. . . occurs when an officer stops a driver for a minor traffic violation in order to investigate a hunch that the driver is engaged in illegal drug activity." U.S. v. Guzman,864 F.2d 1512, 1515 (10th Cir. 1988).
Under the circumstances of the instant case no factual predicate of a "pretextual stop" has been shown.[3]
However, even if the evidence were so, the result in the instant case would be the same.
There is a split of authority in the federal cases whether the constitutionality of a pretextual stop should be determined by an objective or subjective test.[4] Guzman, supra, at p. 1515.
Under the majority "objective" test, "so long as the police are doing no more than they are legally permitted and objectively authorized to do, (the resulting stop or) arrest is constitutional." U.S. v. Cummins, 920 F.2d 498, 501
(8th Cir. 1990).
Adopting the minority "subjective" test as the defendant requests, also does not make this stop pretextual. Considering the trooper's state of mind in the instant case the court finds that he would not have stopped the subject vehicle if the defendant operator had been wearing a seat belt; that the trooper also wanted to stop the subject vehicle because it was a weekend during the early morning hours to observe if there was "DWI" operation, as was the policy of his fellow troopers. However, there is no evidence that Trooper Lynch intended to make the stop for any drug-related reason. Without a "drug-related" intent the claim of a pretextual stop in the instant case, even under a subjective test, fails.
For the reasons herein stated, the motion to supress is denied. CT Page 10973
SCHIMELMAN, J.