STATE OF CONNECTICUT *v.* MELVIN BROKAW
(11114)

FOTI, LAVERY and SCHALLER, Js.

Argued January 12—decision released August 17, 1993

*John R. Donovan,* for the appellant (defendant).

*John A. East III,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,*

state's attorney, and *Maxine Wilensky,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of possession of cocaine with the intent to sell by person who is not drug-dependant in violation of General Statutes § 21a-278 (b).[1] The defendant claims that the trial court improperly (1) denied his motion to suppress evidence by improperly ruling that he was not illegally seized in violation of his rights under the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution, (2) denied his motion for a mistrial which was based on the state's improper cross-examination of a defense witness, and (3) permitted testimony concerning his prior arrest. We affirm the judgment of the trial court.

The record reveals the following facts. On December 21, 1990, at approximately 5:10 p.m., Detective Trevor Thorpe of the narcotics division of the Meriden police department received a telephone call from a confidential informant. In the past, this informant's reliable and accurate information had resulted in arrests and seizures of narcotics. The informant told Thorpe

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

that at approximately 5:30 p.m. the defendant would be in the Fontana DiCalabria bar possessing cocaine for sale, and that a truck belonging to the defendant's son would be outside. The informant also stated that he had purchased cocaine from the defendant in the bar on a regular basis, most recently within the prior two weeks.

On the basis of this information, Thorpe and two other police officers went to the Fontana DiCalabria bar at 5:30 p.m. to investigate. After verifying that a truck parked in front of the bar, which matched the informant's description, belonged to the defendant's son and that the defendant was inside, the officers entered the bar. They wore plain clothes and did not identify themselves or display any weapons as they approached the defendant to question him. When the defendant noticed the three officers approaching him, he turned to his left toward the kitchen to evade them. Simultaneously, the defendant pulled from his pocket a clear plastic bag containing what appeared to be narcotics. The defendant fled into the nearby kitchen, pursued by the officers, and dropped the bag into a trash can. The police officers arrested the defendant and retrieved the plastic bag, which proved to contain cocaine.

I

The defendant's first claim is that the trial court improperly denied his motion to suppress the narcotics found in his possession. The trial court found that the defendant was not seized in violation of his rights under the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution, and that the officers had probable cause to arrest the defendant. We conclude that the defendant was not seized in violation of his constitutional rights. Therefore, we do not have to reach the issue of probable cause.

For the purposes of our state constitution, our Supreme Court defines a person as "seized" when " 'by means of physical force or a show of authority, his freedom of movement is restrained.' . . ." *State* v. *Ostroski,* 186 Conn. 287, 291, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982), quoting *United States* v. *Mendenhall,* 446 U.S. 544, 553–54, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). This objective test hinges on whether " 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *State* v. *Ostroski,* supra, 291–92. Recently, our Supreme Court reiterated this standard in *State* v. *Oquendo,* 223 Conn. 635, 652, 613 A.2d 1300 (1992). The *Oquendo* court held that our state constitution affords a higher level of constitutional protection with regard to seizures than does the fourth amendment to the United States constitution, as interpreted by the United States Supreme Court.[2] Id., 649–50.

Seizure does not require physical restraint. See id., 653. Absent physical restraint, seizure results from a show of authority sufficient in the particular circumstances to make a reasonable person believe he was not free to walk away. *State* v. *Ostroski,* supra. Such a seizure occurred in *State* v. *Oquendo,* supra. In that case,

[2] In 1991, the United States Supreme Court narrowed the definition of what constitutes an illegal seizure for fourth amendment purposes in *California* v. *Hodari D.,* 499 U.S. 621, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991). There, the court held that a suspect, who fled at the sight of police officers, was not seized under the fourth amendment when the officers gave chase. The court concluded that a seizure for fourth amendment purposes is equivalent to an arrest at common law, which it defined as "either physical force . . . or . . . submission to the assertion of authority." Id., 626. After a thorough historical analysis of the development of article first, § 7, of the Connecticut constitution, the *Oquendo* court declined to adopt the restricted definition of "seizure" in *California* v. *Hodari D.,* supra. Rather, our Supreme Court chose to adhere to its broader standard of what constitutes a seizure under the state constitution. *State* v. *Oquendo,* 223 Conn. 635, 652, 613 A.2d 1300 (1992).

a uniformed police officer in his cruiser stopped a couple walking along a deserted street at 1 a.m. The officer questioned them about their activities and told them to approach him with the duffle bag they were holding. The late hour, the deserted locale, and the visible display of weapons persuaded our Supreme Court that "a reasonable person in the defendant's position would not have believed that he was free to ignore [the officer's] instruction and walk away." *State* v. *Oquendo,* supra. Thus, although not physically restrained, the defendant was seized.

In this case, however, no seizure occurred. The defendant claims that the officers seized him by entering the bar and walking toward him. To uphold the defendant's claim we would have to conclude that a reasonable person would have believed he was not free to leave when, while sitting in a bar with several other patrons, he was approached by three men he did not know, who wore plain clothes and did not display weapons or badges. We are unable to do so; the approach of three unidentified people under those circumstances does not create a constitutional seizure.

In *State* v. *Rivera,* 23 Conn. App. 592, 594, 583 A.2d 931 (1990), cert. denied, 217 Conn. 807, 584 A.2d 1192 (1991), we said: "A fleeing defendant's fourth amendment rights are not implicated until the pursuing police officer first issues a command to halt. *Michigan* v. *Chesternut,* 486 U.S. 567, 108 S. Ct. 1975, 100 L. Ed. 2d 565 (1988). 'Our own case law brings us to the same result. "We know of no Connecticut case . . . that holds that merely following another, absent any show of force or authority or direction to halt, constitutes a stop within the meaning of the fourth amendment." ' *State* v. *Oliver,* 17 Conn. App. 108, 110–11, 550 A.2d 316 (1988), quoting *State* v. *Rodriguez,* 14 Conn. App. 574, 577, 542 A.2d 342 (1988)." The defendant in *Rivera* was followed by a police officer who did not dis-

play a weapon or make a show of authority, while the defendant in the present case was approached by plain clothes officers who did not display weapons or make a show of authority. Like the defendant in *Rivera,* the fourth amendment rights of the defendant here were not implicated through the mere approach of the police officers.

We conclude, on the basis of the foregoing reasons, that a seizure did not take place within the meaning of article first, § 7, of the Connecticut constitution and, therefore, that the defendant's motion to suppress was properly denied.[3]

## II

The defendant next claims that the trial court incorrectly denied his motion for a mistrial which was based on the state's improper examination of a defense witness. We disagree.

The defendant called a witness to testify that, contrary to the police officers' assertions, the bar was crowded when the officers approached the defendant. The following exchange occurred during the state's cross-examination:

"[State's Attorney]: A couple of last questions, have you ever bought cocaine from the defendant?

"[Defense Counsel]: Objection. Objection. May I ask for the jury to be excused?

"[State's Attorney]: I believe the question was asked and answered, Your Honor.

"[Defense Counsel]: I would like to make an argument outside the presence of the jury, Your Honor.

---

[3] Because we find that the defendant's rights under article first, § 7, of the Connecticut constitution were not violated, and because the Connecticut constitution affords a greater level of protection than does the federal constitution, we need not address the defendant's federal claims.

"[The Court]: The objection is going to be sustained. The jury will disregard the question and any answer that was given to it."

After the jury was excused, the defendant moved for a mistrial, arguing that the question was prejudicial and so tainted the proceedings as to deny the defendant a fair trial. The court denied the defendant's motion, stating that it had already told the jury to disregard the question and answer, and offered to make another curative instruction. Defense counsel requested that the court not give another curative instruction because such an instruction would only accentuate the offending question.

On appeal, the defendant claims that the state's attorney's question about past cocaine purchases constituted prosecutorial misconduct sufficient to deprive the defendant of a fair trial. In Connecticut, a mistrial is granted only where it is apparent that some occurrence during trial has deprived the defendant of a fair trial. *State* v. *DeMatteo,* 186 Conn. 696, 703, 443 A.2d 915 (1982); *State* v. *Gooch,* 186 Conn. 17, 25, 438 A.2d 867 (1982); *State* v. *Turcio,* 178 Conn. 116, 143, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980); see Practice Book § 887. The burden is on the defendant to show that the prosecutor's remarks were prejudicial in light of the entire proceeding. *State* v. *Ubaldi,* 190 Conn. 559, 562, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing claims of prosecutorial misconduct. Id. In determining whether prosecutorial misconduct was so serious as to deny a fair trial, our courts focus on "the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the

case . . . the strength of curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987).

Our careful review of the record in this case reveals that the prosecutor's challenged conduct, while of questionable propriety, was not so prejudicial as to taint the entire proceeding and deprive the defendant of a fair trial. *State* v. *Hammond*, 221 Conn. 264, 289, 604 A.2d 793 (1992); *State* v. *Tweedy*, 219 Conn. 489, 509, 594 A.2d 906 (1991). Admittedly, the state's question was uninvited by the defense. The state's attorney's question, however, was an isolated incident. A single questionable statement by the state's attorney will not, in all probability, impair the effectiveness or integrity of the defendant's trial. *State* v. *Joyner*, 225 Conn. 450, 473, 625 A.2d 791 (1993). Also, the trial court took adequate and appropriate curative measures under the circumstances, and the defendant requested that no further measures be taken. "[A] prompt cautionary instruction to the jury regarding improper prosecutorial remarks obviates any possible harm to the defendant." *State* v. *Ubaldi*, supra, 563. Finally, the state's case against the defendant, even without the allegedly improper statement, was sufficiently strong to support conviction. Because the defendant has failed to persuade us that this single statement denied him a fair trial, we conclude that the trial court properly denied his motion for a mistrial.

### III

The defendant's final claim is that the trial court improperly allowed testimony regarding the defendant's prior arrest. We are unpersuaded.

The defendant testified that as he was leaving the kitchen area of the Fontana DiCalabria bar he was jumped by three men he did not recognize, and pushed

back into the kitchen. The state offered to rebut that assertion with testimony of one of the police officers that the defendant recognized the officers as they approached, prompting him to flee and discard his drugs. After an offer of proof and extended colloquy among court and counsel, the trial court permitted the testimony but prohibited any reference to the prior arrest to avoid prejudice. The relevant portion of the officer's rebuttal testimony was as follows:

"[State's Attorney]: And lastly, Detective, have you encountered the defendant before?

"[Detective Thorpe]: Yes, I have.

"[State's Attorney]: And where did you encounter him?

"[Detective Thorpe]: In a municipal building and on the streets of Meriden.

"[State's Attorney]: And at the encounter in the municipal building how long were you in the presence of the defendant?

"[Detective Thorpe]: A half an hour to forty-five minutes.

"[State's Attorney]: And could he clearly see you?

"[Detective Thorpe]: Yes, he could.

"[State's Attorney]: About how far away from him were you for that half an hour to forty-five minutes?

"[Detective Thorpe]: With the defendant and another detective within an eight by ten room."

The defendant claims that the officer's testimony amounted to evidence of the defendant's prior arrest. As such, the evidence was inadmissible for impeachment purposes, and could be admitted only if its materiality and relevance outweighed the prejudicial effect.

*State* v. *Geyer,* 194 Conn. 1, 11, 480 A.2d 489 (1984). That important rule, however, is inapplicable in this case because actual evidence of the defendant's prior arrest was never admitted. The trial court prudently ensured that the officer's testimony would not imply that the defendant had been previously arrested. There are a number of reasons why the defendant may have encountered the officers in a municipal building including his reporting a crime, providing information as a potential witness, or reporting lost or stolen property. Moreover, the defendant invited the line of inquiry, to an extent, by offering evidence that he did not recognize the three undercover officers. See *State* v. *Graham,* 200 Conn. 9, 13, 509 A.2d 493 (1986).

Neither are we persuaded that the officer's testimony coupled with the state's attorney's objectionable cross-examination of a defense witness constitute evidence of the defendant's prior arrest. In both instances, the trial court properly exercised its discretion to make certain that the jury received a fair presentation in accordance with our rules of evidence.

The judgment is affirmed.

In this opinion the other judges concurred.