[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has taken this appeal from a decision of the defendant plan and zoning commission of the town of Bloomfield (commission) denying the plaintiff's application for a special permit and site plan approval to construct a Pizza Hut restaurant on two parcels of land located within the Blue Hills Gateway zoning district and designated as 997-999 and 1009-1011 Blue Hills Avenue in the town of Bloomfield. CT Page 8054
The plaintiff offered evidence at the hearing to show that he acquired title to the property on January 12, 1988, and that he has been the sole owner since that time. Accordingly, the court finds that as the owner of the property at the time the application for the special permit was filed, the plaintiff was aggrieved by the denial of his application; Grace Community Church v. Planning Zoning Commission, 42 Conn. Sup. 256, 258; and that he has maintained his status as an aggrieved party throughout the course of this appeal. Primerica v. Planning Zoning Commission, 211 Conn. 85, 94.
Section IV-S of the Bloomfield zoning regulations which became effective on November 9, 1990, created a new zoning district known as the "Blue Hills Gateway District" on both sides of Blue Hills Avenue which was described as one of the town's "primary access points" and "unique in that it contains a business zone abutting a developed residential zone [and that all] development in the Gateway District must be designed to protect, enhance, and if possible, serve the adjoining residential neighborhoods." The purpose clause of the regulation also stated that the newly-created district was "intended to encourage the development of lower traffic generating retail service and office activities", and "to help promote the public health [and safety] of the Avenue and the adjoining residential neighborhood . . .", and that the land uses permitted in the district "shall be designed to discourage discernible detrimental influences such as lights, noise, and traffic to the surrounding area and yet project a sense of community and economic soundness."
Paragraph 3 of the regulation provides that among the uses that "may be permitted" subject to the regulations generally applicable to approvals of special permits and site plans are "restaurants, but excluding drive-in facilities, and fast food restaurants . . ." In order to comply with these restrictions, the plaintiff's application, as described by his attorney at the hearing (Exhibit 29, p. 4), proposed "a 98 seat sit-down restaurant, with a host or hostess, with waiters and waitresses, with stainless steel silverware, or the equivalent thereof, with materials for eating and drinking that are materials that are reusable and are not plastic or [disposable]".
Prior to the public hearings on the application, the CT Page 8055 town planner, in his report to the commission (Exhibit 14), after noting that this was the first application filed under the Gateway regulations, stated that the mixed uses surrounding the site included "a gas station and residential uses to the south, a Town library and park complex to the north and west, and commercial and residential uses to the east [and that this] variety of uses poses a real challenge in redeveloping the site to ensure the use and site plan fit with the neighborhood." He also pointed out that when the district regulations were being developed, restaurants were one of two uses that "generated more discussion than any others", and as a result fast food restaurants were eliminated from the zone.
The hearings on the plaintiff's application were conducted on December 12, 1991, and January 2, 1992, and generated strong opposition from members of the public based on their concerns that the proposed use would be detrimental to the residents of the neighborhood, that no need had been shown for the proposed use in that location because it would create a tenth pizza outlet within a two-mile radius of the Blue Hills area, that it would be a public safety problem in terms of increased criminal activity in the area, that it would increase "automotive, odor, litter and noise pollution", and that it would have a generally adverse impact on the residential portions of the Blue Hills corridor. See Exhibits 26, 29, 30. The town planner stated in his concluding remarks to the commission (Exhibit 30, pp. 30-33) that the "crime related issues" were germane to their discussions because "it's a public health, safety and welfare aspect of your charge", that the applicant had indicated his willingness "to deal with some of the problems such as noise, removal of trash during certain hours [and] lighting of the site [but that there] are inherent issues that come along with a food use that make it very difficult to be compatible with residential properties . . . ".
At the conclusion of the hearing of January 2, 1992, the commissioners generally agreed in the course of their discussion that the proposed use constituted a "restaurant" within the meaning of the regulations and that the applicant had done his best to buffer and screen the property as recommended by the town planner. Exhibit 31, pp. 1, 2, 7. Nevertheless, they unanimously agreed that there was no need CT Page 8056 for this particular use at this particular site in the Gateway district, and that despite the buffering and screening, the location of the parking lot with reference to the nearby homes would nevertheless be detrimental to the adjoining residences and expressed doubt that noise, littering and the consumption of food outside of the building could be controlled. Id. pp. 2, 3, 5, 7, 8.
The commission thereafter unanimously voted to deny the plaintiff's application for a special permit and site plan approval based on the following reasons:
 1. This Special Permit would not be consistent with the statement of purpose in Section IV-S of the regulations of the Town of Bloomfield in that it does not sufficiently protect and enhance the neighborhood or serve the adjoining neighborhood.
 2. It is not consistent with the statement of purpose that the Commission shall be trying to encourage development of lower traffic-generating retail, service, and office activities.
 3. It is not consistent with the statement of the special permit relating to protecting the character of the existing neighborhood.
 4. The need for the proposed use in the proposed location has not been demonstrated because of the availability within a 3 — 5 mile radius of other restaurants.
 5. This application will negatively impact the the existing and future characteristics of the neighborhood.
 6. The application does not provide sufficient safeguards to protect adjacent property and the neighborhood in general from detriment.
The plaintiff argues that it is undisputed that he has met all of the express conditions of the Gateway regulation including the requirements for increased buffering, screening CT Page 8057 and diminished coverage. Exhibit 30, pp. 58-59, 81. He also asserts that a special permit may be denied only where the specific standards stated in the regulations are not met, and that therefore the commission could not deny the plaintiff's application solely on the basis of a claimed failure to satisfy the general considerations stated in the purpose clause of the regulation.
His argument overlooks the fact that paragraph 3 of Section IV-S expressly provides that uses such as the restaurant proposed by the plaintiff may be permitted subject to special permit approvals under Section III-L which is the regulation applicable to special permits generally. That section provides that "[i]n considering the proposed project or use the Commission shall be guided by the following:
 a. The need for the proposed use in the proposed location.
 b. The existing and future character of the neighborhood in which the use is to be located.
* * *
 h. Safeguards to protect adjacent property and the neighborhood in general from detriment."
It should be noted that the foregoing "considerations" are virtually indistinguishable from those stated in the commission's reasons for its decision. Under Connecticut law a zoning commission may "exercise [its] discretion to determine whether [such] general standards in the regulations have been met in the special permit process." Connecticut Health Facilities, Inc. v. Zoning Board of Appeals, 29 Conn. App. 1 at 6.
Our Appellate Court has recently held that the trial court properly relied on Cameo Park Homes, Inc. v. Planning Zoning Commission, 150 Conn. 672, to support its conclusion that a special permit application may be denied on the basis of general considerations alone. Whisper Wind Development Corp. v. Planning Zoning Commission, 32 Conn. App. 512, 521. The claim made by the appellant in Cameo, like the plaintiff's claim in this case, was that where there has been compliance with the applicable CT Page 8058 regulation, the commission can do no more than impose reasonable restrictions and conditions on the grant of the special permit.
The Supreme Court in Cameo stated that such a mechanical, pro forma approval of a special permit request was inconsistent with the Stratford zoning regulation's individualized treatment of each proposed use as a "special case" by specially applying the regulations in harmony with their intent. 150 Conn. at 676. Similarly, in this case the regulation (Section III-L) states that "[u]ses requiring special permits are declared to possess such special characteristics that each must be considered as an individual case", and it must be determined whether "the use is in harmony with the intent of these regulations and the character of the area in which it is located . . .
The Bloomfield regulation also states that the commission will be guided by the enumerated factors "in considering" (emphasis added) the proposed project or use, thereby suggesting that the general considerations are to be used in determining whether to deny or to grant the permit rather than being considered only for the limited purpose of placing conditions on the permit. Whisper Wind, 32 Conn. App. at 521-22. Moreover, even under the reasoning of Judge Dupont's dissent in that case, the facts and circumstances of this case based upon the evidence presented in the course of the hearings could reasonably have been considered by the commission to be, in Judge Dupont's words, one of those "limited instances where the commission has the authority to deny the application in toto [because] it is impossible to address all of the concerns of the commission through the use of conditions." Id. 529.
The plaintiff's remaining grounds for appeal are that the denial was contrary to the record of the public hearing on the application, that the reasons stated in the denial have no basis in the record, and that the commission acted illegally in denying the site plan portion of the plaintiff's application.
When considering an application for a special permit, a zoning commission acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the CT Page 8059 standards set forth in the regulations and the "conditions necessary to protect the public health, safety, convenience and property values" are satisfied under 8-2 of the General Statutes. A. P. W. Holding Corp. v. Planning Zoning Board, 167 Conn. 182, 184-85. The commission has no discretion to deny a special permit if the standards imposed in the regulations and the statute are satisfied. Id. 185.
When the commission has stated the reasons for its actions, the reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. Daughters of St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53, 56. The commission's action must be sustained if even one of the stated reasons is sufficient to support it. Id. 56-57.
The thrust of the plaintiff's argument as stated in his supplemental brief is that he is "attacking the stated reasons for the denial of the Plaintiff's application because the reasons for the denial are based on `general policy statements' in the purpose clause of the Gateway District regulations which contain no standards." He cites in support of this claim an "admission" made by the chairman of the commission in the course of questioning plaintiff's counsel in which he stated that (Exhibit 30, p. 67) "[i]t is true that the purpose section, while not specifically regulatory, is a significant guiding [sic] guidance for the Commission in reviewing any application that comes into the gateway district, . . . ".
The chairman's statement, which is not quoted in its entirety, was preliminary to a question put to plaintiff's counsel as to whether "there is a need for the proposed use at this particular location", and it correctly states the general proposition that although preambles and purpose clauses of a zoning ordinance are not controlling and cannot be used to bypass the specific language of the regulations, they may be used in the interpretation of the ordinance to determine the enacting authority's intent. 83 Am.Jur.2d, Zoning and Planning 707. The portion of the statement which has been omitted reads as follows: "but we are specifically referred to other sections of the regulations, that I would like to refer to get your input from and your opinion. Particularly on the requirements CT Page 8060 for special permit uses." Exhibit 30, p. 67.
"When considering an application for a special permit, the commission is called upon to make a decision as to whether a particular application [for a proposed use] would be compatible with the particular zoning district, under the circumstances then existing." Barberino Realty Development Corp. v. Planning Zoning Commission,222 Conn. 607 at 614. In accordance with Section III-L, the general regulation governing all special permits, and in particular, paragraphs la, lb and lh thereof, the commission's consideration of the plaintiff's application was properly based on the "need for the proposed use in the proposed location", the "existing and future character of the neighborhood [and zoning district] in which the use [was] to be located", and the absence of "[s]afeguards to protect adjacent property and the neighborhood in general from detriment."
Accordingly, the court concludes that the commission's findings comply with the requirements of Section III-L of the Bloomfield zoning regulations governing special permits, and that the record amply supports the denial of the application for the reasons stated by the commission.
The denial of the site plan portion of the application was a necessary consequence of the denial of the application for a special permit because under the regulations site plans are "inseparable from and part and parcel of [the related] special permit application." SSM Associates Limited Partnership v. Plan Zoning Commission, 211 Conn. 331, 334. As stated by the town planner (Exhibit 30, p. 36) in the course of the hearings, "I think this is really an issue of use, not site plan, although there are site plan criteria involved if you get beyond the discussion of use."
For the foregoing reasons, the plaintiff's appeal is dismissed.
Hammer, J.