[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE DEFENDANTS' MOTION FOR SUMMARYJUDGMENT AS TO COUNTS THREE, FOUR, FIVE AND SIX
The third and fourth counts of the revised complaint in this action, which was originally filed on July 23, 1991 as a six count complaint, allege that the defendants, Gregory Post and Sterling MacPherson, who were acting at the time in the course of their official duties as state police officers, engaged in the pursuit of the plaintiff at high speeds while he was operating his motorcycle on Route 190 in the town of Stafford on July 28, 1989, thereby causing him to lose control of the vehicle and crash into a tree, as a result of which he sustained serious and disabling personal injuries. The fifth and sixth counts of the complaint allege reckless and intentional conduct, respectively, on the part of the defendants based on the same underlying facts.
Paragraph sixteen of the third count alleges that the pursuit of the plaintiff by the defendants constituted an unreasonable seizure under article first, § 7, of the state constitution, and that it was also an unlawful detention in violation of his right of persona liberty under article first, § 9 of the state constitution. The plaintiff also alleges in paragraphs seven through fifteen of the third count that the injuries he sustained as a result of the accident were caused by the negligence of the defendants in pursuing the plaintiff and in continuing to do so without probable cause.
The fourth count alleges a right of action against the state under § 52-556 of the General Statutes for damages resulting from the negligence of the defendants as state employees in their operation of state owned motor vehicles. The allegations of negligence in the fourth count of the revised complaint dated October 23, 1992 are the same as those made in the original CT Page 9629 complaint, but the statutory basis for the defendants' liability had not been stated by the plaintiff in any prior pleading.
The defendants have moved for summary judgment on the remaining four counts of the revised complaint on the following grounds, first, as to the third count, that the alleged actions of the defendants do not violate article first, § 7 or article first, § 9 of the Connecticut constitution, second, that the fourth count is barred by the statute of limitations, and third, that the fifth and sixth counts are barred by the doctrine of sovereign immunity.
The factual basis for the defendants' motion based on their affidavits is that not only was there no high speed chase as alleged by the plaintiff, there was no pursuit at all. The defendant Post states in his affidavit that there had been an earlier report of a stolen motorcycle, that he observed a motorcycle being operated at a high rate of speed from the opposite direction on the highway and that after he had made a U-turn in order to investigate, the vehicle sped off out of his view and he advised the barracks by radio of what he had observed.
Post states that thereafter he saw the motorcycle proceeding at a slow rate of speed and he glimpsed the license plate but that he misread the number because the driver quickly accelerated, that he called in the plate number, that up to that point he had not activated his siren or emergency lights nor had he decided whether to try to stop the vehicle, and that the license check showed that the number plate belonged to a different kind of vehicle from a different part of the state which tended to confirm his suspicion that the vehicle had been stolen. The affidavit goes on to state that because he was then approaching a business area, he activated his flashing lights to alert pedestrians and motorists, that he again saw the vehicle proceeding at a lower rate of speed, that it accelerated and crossed into the opposite lane of traffic almost striking another police cruiser, that he then abandoned any attempt to stop it, and that the motorcycle and the injured and unconscious operator were found in a field on the side of the highway a short time later.
During the period of time between the first sighting of the motorcycle and the crash (which according to Post's affidavit was no more than two or two and one-half minutes) the defendant CT Page 9630 MacPherson, as stated in his affidavit, was inside the police barracks, and as he was leaving, he heard, but did not see, the vehicle. He states that after Post reported by radio that he had lost sight of it, MacPherson saw the motorcycle for the first time when he arrived at the scene of the accident and that he then called for medical assistance and rendered first-aid to the injured defendant.
The plaintiff's affidavit states that he was driving under the speed limit until a state police cruiser made a U-turn and began to follow him, that earlier that week he had been "accosted" by officers from Troop C "without provocation," and that criminal charges had been brought against him, that he speeded up when Post started following him because he felt that he "was in imminent danger of physical harm or unwarranted detention," and that he did not slow down thereafter at any time. He also states that his last recollection prior to the accident was that another police cruiser entered the highway from the barracks thereby causing him to swerve into the westbound lane and that at the time he lost control of the motorcycle he believed that he was still being pursued by the state police officer who had been following him.
Under article first, § 7 of the Connecticut constitution a person has been "seized" when by means of physical force or a show of authority his freedom of movement is restrained. State v.Oquendo, 223 Conn. 635, 647 (1992). In making such a determination, the court must consider whether in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave, and "[w]hether there has been such a seizure in an individual case is a question of fact." State v. Ostroski, 186 Conn. 287, 291-92 (1982).
Our Supreme Court has recently reaffirmed the holding inOquendo, in which it refused to adopt for purposes of the state constitution, the standard established by the United States Supreme Court to determine when a seizure has occurred under thefourth amendment. State v. Hill, 237 Conn. 81, 87 n. 10 (1996), see California v. Hodari D., 499 U.S. 621 (1991) (seizure for purposes of, the fourth amendment requires either physical force or submission to an assertion of authority by the police). InHodari D., the Court relied in part on its decision in Brower v.Inyo County, 489 U.S. 593 (1989), a civil rights action involving a pursuit by police cars with flashing lights for twenty miles of a vehicle which did not stop until it crashed into a roadblock CT Page 9631 placed in the road by police as a result of which the driver sustained fatal injuries.
Under the rule stated in Brower and reaffirmed in Hodari D., the word "seizure", as construed by the federal courts under thefourth amendment, necessarily implies an intentional acquisition of physical control, not merely "a governmentally caused [or even a] governmentally desired termination of an individual's freedom of movement . . . through means intentionally applied." Brower, supra, 489 U.S. at 596-97 (emphasis in original). Where the show of authority is only by means of flashing lights and continuing pursuit by the police, the termination of the pursued motorist's movement in the federal constitutional sense was "his loss of control of his vehicle and the subsequent crash." Id. 597; see also Galas v. McKee, 801 F.2d 200, 203 (6th Cir. 1986).
In cases where a police chase is alleged, any assessment of whether police conduct amounts to an unconstitutional seizure can be made only after a consideration of all the circumstances, surrounding the incident in each individual case and a determination after a review of all of the facts, that a reasonable person would have believed that he was not free to continue on his way. Michigan v. Chesternut, 486 U.S. 567, 573
(1988). The test "is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of the conduct in isolation [and] what constitutes a restraint on liberty prompting a person to conclude that he is not free to `leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." Id.
The defendants' first claim is that there was no "seizure" under article first, § 7 of the state constitution because there was no show of force or authority on the part of either officer that restrained the plaintiff's freedom of movement and that the crash and the injuries he sustained were solely the result of his own choices which culminated in his loss of control of the motorcycle. In the alternative, they argue that even if there was a seizure, there was a reasonable basis for an investigative stop of the vehicle based on Post's observations and the information available to him at the time.
The affidavit submitted by Post states (¶ 26) that his initial intent in following the plaintiff's vehicle was only "to get enough information so that the motorcycle could be identified CT Page 9632 and a determination made as to whether it was the stolen motorcycle reported at roll call [and that at no time did he] stop, attempt to stop or engage the motorcycle in `pursuit' as that term is used" in § 14-283a(a) of the General Statutes which governs high speed chases. The plaintiff's affidavit states (¶ 10) that after he saw Post "make a U-turn and follow me, I had reason to believe and did believe that I was known to all area troopers, that all said troopers had malice toward me, and that I was in imminent danger of physical harm or unwarranted detention."
Under our state constitution as construed in State v.Oquendo, supra, 647, the threshold question of whether there has been a seizure continues to be determined by applying the "free to leave" objective standard to the police conduct in question rather than the narrower federal standard. State v. Greenfield,228 Conn. 62, 68 (1993). Under that standard, therefore, a seizure may take place even where there is no submission to a show of authority or use of physical force by the police as required under the standards now applied by the federal courts infourth amendment cases. Id.
Where a police officer merely approaches or follows a pedestrian, either in a police car or on foot, such police conduct does not, in and of itself, "constitute a show of authority sufficient to cause the subject of the officer's attention reasonably to believe that he or she is not free to leave." State v. Hill, supra, 237 Conn. 91. Although the officer is in uniform and is operating a marked police vehicle, there is no seizure where he does not turn on his "emergency lights, headlights, loudspeaker or siren [or does] not order the person to stop or otherwise attempt to communicate with him in any way [or] display a weapon." Id. 89; see also State v. Rivera,23 Conn. App. 592, 595 (1990).
The driver of a vehicle on a public highway has no reasonable expectation of privacy in his movements along the highway, and continuous surveillance by the police by visual observation alone does not constitute a seizure in the constitutional sense. UnitedStates v. Knotts, 460 U.S. 276, 281-82 (1983). The mere characterization of police conduct as a "chase" is not enough, standing alone, to show that such conduct would "have communicated to the reasonable person an attempt to capture or otherwise intrude upon his freedom of movement." Michigan v.Chesternut, supra, 486 U.S. 574-75. CT Page 9633
The plaintiff's subjective belief when he increased his speed after he saw the police cruiser turn around to follow him, as stated in his affidavit, was that he was not "free to leave", that his reaction was reasonable under the circumstances because of previous encounters that he had with the police earlier that week, and that, in any event, Post had no reason to suspect him of any illegal activity when he began to follow him. Post's affidavit, on the other hand, states that his only purpose when he activated his flashing lights was to alert pedestrians and highway traffic, that it was not his intention to use those warnings as a "show of authority" in order to make the plaintiff slow down or stop, and that even if his decision to do so constituted a seizure under state constitutional standards, his actions were reasonable under all of the circumstances.
"[S]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." United Oil Co. v. Urban Redevelopment Commission,158 Conn. 364, 376 (1969). "Trial by affidavit [in such cases] is no substitute for trial by jury [because it] is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised." Poller v. Columbia Broadcasting System, Inc.,368 U.S. 464 at 473 (1962); United Oil Co., supra, 376.
In a factually similar case involving a motorcyclist who did not stop in response to the flashing lights of a police car, the court stated that whether a seizure had occurred and, if it did, whether it was reasonable, were highly factual questions and that the driver's failure to stop made the "necessarily imprecise"Mendenhall — Chesternut test even more difficult to apply to the underlying contested facts. Mover v. Dunn County, 691 F. Sup. 164,169 (W.D. Wis. 1988). The court denied the defendant's motion for summary judgment in that case "[b]ecause the determination whether the pursuit was a seizure depends on the resolution of a factual dispute [and that it] would be premature to determine at this stage whether such a seizure was reasonable under the circumstances." Id. 172.
For the foregoing reasons, the defendants' motion for summary judgment based on their claim that the alleged actions of the defendants did not violate article first, § 7 of the state constitution is denied. CT Page 9634
The plaintiff's second constitutional claim is that he was deprived of his civil rights by the negligence of the defendants in pursuing him until he crashed his vehicle and was injured, thereby violating his right of personal liberty under article first, § 9, the due process clause of the state constitution, which provides that "[n]o person shall be arrested, detained or punished, except in cases clearly warranted by law." The defendants argue that they are entitled to summary judgment in their favor on this constitutional claim based on the decisions of the United States Supreme Court in Daniels v. Williams,474 U.S. 327 (1986) and Davidson v. Cannon, 474 U.S. 344 (1986), in which the Court held that merely negligent conduct by a state official, even though it causes serious personal injury, does not constitute a deprivation of liberty under the due process clause of the United States Constitution.
Shortly after Daniels and Davidson were decided, the rule stated in those cases was applied by the United States District Court for Connecticut in Stanulonis v. Marzec, 649 F. Sup. 1536
(D. Conn. 1986), a factually similar civil rights action, in which one of the defendant state police officers was pursuing an admitted speeding motorcyclist in order to verify his license plate number and was unaware of the fact that a town constable had set up a roadblock with his vehicle which caused the motorcycle to crash, as a result of which the plaintiff was severely injured. The court granted the defendants' motion for summary judgment, stating that there was insufficient evidence upon which the conduct of the pursuing officer and his supervisor "could be found to be anything beyond negligence, if that [and that as] a matter of law [their] actions could not be found to be more than negligence, if that." Id. 1544-45.
Our Supreme Court has held that article first, § 9 of the state constitution does not preclude the police from detaining a vehicle for limited investigative purposes even in the absence of probable cause, and that the federal standards for constitutionally permissible Terry stops determine whether such a detention is "clearly warranted by law" within the meaning of the constitutional provision. State v. Lamme, 216 Conn. 172, 184
(1990). In Mahoney v. Lensink, 213 Conn. 548, 571-72 (1990), the Supreme Court extended its application of federal due process standards to the statutorily created guarantee of the due process rights of mental health patients mandated under § 17-206b (now codified as § 17a-541) of the General Statutes and held CT Page 9635 that in the context of a civil rights action acts of mere negligence do not violate a person's due process rights under the state constitution. Id. 572.
Accordingly, the court finds that the alleged actions of the defendants do not constitute a violation of article first, § 9, of the state constitution.
The fourth count of the plaintiff's revised complaint alleges that he has a right of action against the state under §52-556 of the General Statutes which provides that any person injured by the negligent operation of a motor vehicle owned by the state and operated by a state employee has a right of action against the state for damages. The defendants claim that such an action is barred by the statute of limitations because the statutory basis for the defendants' liability was not alleged until after the expiration of the two year limitations period.
An amendment may amplify and expand the original allegations of the complaint by stating alternate theories of liability so long as the defendant has fair notice of the particular transaction or occurrence upon which the plaintiffs claims are based. Gurliacci v. Mayer, 218 Conn. 531, 546-49 (1991); see alsoBurgess v. Vanguard Insurance Co., 192 Conn. 124 (1984). The rule that amendments relate back to the date of the complaint unless they allege a new cause of action is consistent with the objective of statutes of limitations to protect parties from the necessity of defending stale claims, because the amendment will not relate back unless the original pleading has given notice to the adverse party that a claim is being asserted against him from some particular transaction or occurrence. Giglio v. ConnecticutLight Power Co., 180 Conn. 230, 239-40 (1990).
It should also be noted that after the revised complaint was filed on October 23, 1992, the defendants moved to strike only the third, fifth and sixth counts of the complaint, and although the statute of limitations issue was apparent on the face of the pleadings at that time they chose not to challenge the legal sufficiency of the fourth count either by way of a motion to strike or by filing a motion for summary judgment as to all of the counts under § 379 of the Practice Book which permitted such a motion at any time regardless of the state of the pleadings. The purpose of that amendment to the rule, which became effective on October 1, 1992, was to encourage litigants to test the legal sufficiency of the complaint at the earliest CT Page 9636 possible time in order to determine whether they were entitled to judgment as a matter of law so that such issues could be resolved before the pleadings were closed for purposes of judicial economy and to avoid placing the party whose pleading was challenged at a procedural disadvantage in the event of an adverse ruling. GECapital Mortgage Services v. Miller, 15 Conn. L. Rptr 213 (1995).
For the foregoing reasons, the motion for summary judgment as to the fourth count is denied.
The defendants' claims as to the fifth and sixth counts alleging reckless and intentional conduct are that the claims are barred by sovereign immunity and that judgment should enter because the conduct of the defendants was not reckless or intentional as a matter of law.
The claim of sovereign immunity as a defense to those counts was previously raised by way of a motion to strike those counts that was filed on December 3, 1992, and denied by this court (Shaughnessy, J.) in a memorandum of decision dated August 18, 1993. The court's ruling was based on § 4-165 of the General Statutes which grants immunity to state officers or employees for damage or injury which is not wanton, reckless or malicious and is caused in the discharge of their duties or within the scope of their employment.
Accordingly, this court finds that the complaint sufficiently alleges the requisite conduct which if proved would be sufficient to impose personal liability on the defendants.
Recklessness involves a subjective realization of a substantial and unjustifiable risk and a conscious decision to ignore it, and intentional conduct requires a conscious objective to cause a particular result. State v. Jupin, 26 Conn. App. 331,340 (1992). Cases where motive, intent, consciousness or subjective reactions are involved are not usually suited for summary disposition. 73 Am.Jur.2d, Summary Judgment, § 4, p. 726 (citing United Oil Co. v. Urban Redevelopment Commission, supra, 158 Conn. 364, 376 (1969).
For the foregoing reasons, the defendants' motion for summary judgment as to the fifth and sixth counts is also denied.
Harry Hammer, Judge CT Page 9637